# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO ROSAS, | Case No. 1:14-cv-00611 DLB |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
| v. | |
| D, DAVEY, et al., | |
| Defendants. | |

Plaintiff Federico Rosas ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on April 24, 2014. Pursuant to Court order, he filed his First Amended Complaint ("FAC") on August 11, 2014. He names thirteen Defendants employed at Kern Valley State Prison ("KVSP"), and Chief of Appeals Zamora as Defendants.[1]

**A.     SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on May 9, 2014.

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     FACTUAL ALLEGATIONS**

Plaintiff is currently incarcerated in the Security Housing Unit ("SHU") at the California Correctional Institution ("CCI"). The events at issue occurred while Plaintiff was housed at KVSP.

On July 6, 2013, at KVSP, Plaintiff was involved in a physical fight with his cellmate. He explains that numerous inmates at KVSP, including his cellmate, had discovered that he had a Penal Code 288 charge (lewd acts with a minor). Plaintiff received threats and "acted first by

2

fighting his ex-celly." ECF No. 15, at 4.  Plaintiff states that they fought four times, and his cellmate yelled for help.  Plaintiff was taken to the program office where Defendant Waddle seemed angry and was hard to talk to.  He told her that numerous inmates knew about his 288 charge.  Defendant Waddle said that she "didn't give a shit" and told Plaintiff that he was going back to the yard.  Plaintiff told her that he just fought his cellmate and that he wanted to go to Ad-Seg to avoid more trouble.  Defendant Waddle went to talk to Plaintiff's cellmate and he told her that Plaintiff had a weapon.  Plaintiff was placed in Ad-Seg because of the weapon, and he contends that his 115 falsely stated that the weapon was in plain view.  He alleges that Defendant Waddle did not sign the lock-up order and had someone else sign it.  Plaintiff now fears for his life and states that Defendants keep putting him on double-cell status.  His 128-G includes erroneous facts and does not include Plaintiff's past history of cell violence.

Plaintiff next alleges that Defendants Davey, Sandoval, Goss, Gricewich, Hancock, Swaim, Waddle and Nuckles, who are in charge of classification, have been deliberately indifferent.  Plaintiff contends that Defendant Davey stated that he was going to give him a cell mate over and over, showing that he was trying to inflict harm.  Plaintiff feared for his life because Defendants were not paying attention to his violence and failed to investigate all of his records.  He states, "I am violent and yet they failed to monitor me."  ECF No. 15, at 5.  Plaintiff also contends that this shows that Defendants have failed to "equally treat" him.

From July 6, 2013, when Plaintiff went into Ad-Seg, until he was transferred on November 25, 2013, Plaintiff complains of a pattern of abuses inflicted for the purpose of causing harm.  Defendant Becera asked if Plaintiff was on a hunger strike, and Plaintiff said no.  Plaintiff sometimes didn't feel like eating because he felt like he was being punished for no reason.  Soon after, Defendant Becera came to Plaintiff's cell to serve food.  Plaintiff again refused to eat and Defendant Becera seemed to get offended and said, "fuck you..."  Plaintiff stayed quiet, but he contends that the incident easily could have escalated.

Defendant Clare also skipped Plaintiff's cell for feeding twice.  Plaintiff asked where his food was and Defendant Clare told him that he didn't get up.  Plaintiff said that he did, and Defendant Clare shook his shoulders as if to say that he didn't care.

3

Defendant Blake came to his cell, yelling "chow time," in a loud voice, slamming his fist and using a facial expression that made Plaintiff uncomfortable.

Next, Plaintiff alleges that Defendant Monsenares "finally" gave him some of his property over four months after he was placed in Ad-Seg. However, he did not give Plaintiff his inventory sheet or his coaxial cable. Defendant Monsenares told Plaintiff that he never had a cable, and to stop asking other officers for it. Plaintiff contends that this was meant as a threat, and to keep him from asking for his property. He alleges that Defendant Monsenares violated the Eighth Amendment and his First Amendment rights by attempting to silence him.

Plaintiff also contends that Defendants' actions were part of a constant pattern of "psychological pain and verbal threats" meant to inflict psychological harm "to the point of becoming physical harm." ECF No. 15, at 7. Plaintiff states that if he had acted upon the threats, he would have been assaulted.

Plaintiff alleges that Defendant Tallerico contributed to this pattern by failing to handle his property appeal correctly. Instead, he used false and confusing information. Plaintiff contends that while all the other inmates could watch television, brush their teeth and use their soap, Plaintiff was left in his cell with nothing to do and was deprived of his basic human needs. He contends that this was punishment without due process. Instead of finding a solution to his problem, Defendant Tallerico failed to act.

On November 24, 2013, Defendant Blake asked Plaintiff to pack his property for transfer. Plaintiff refused because (1) his SHU placement was incorrect and inappropriate; (2) his name was incorrect on the transfer roster; (3) his request to speak to the sergeant was denied; and (4) his 128-G and SHU assessment were full of errors. Plaintiff contends that Defendant Blake came to his cell with a full box of property, even though Plaintiff needed three empty boxes for his property. He believed that Defendants were retaliating against him and were trying to confiscate the property that he had just received. Plaintiff contends that his transfer was in retaliation for asking for equal rights and "speaking up." ECF No. 15, at 8. He further alleges that Defendant Hancock failed to stop the retaliatory transfer.

4

Finally, Plaintiff contends that he sent an appeal to Defendant Zamora notifying him of staff misconduct at KVSP.  Defendant Zamora returned the appeal to Plaintiff, stating that office staff could not respond to the issue.  Defendant Zamora contributed to the psychological torture when he failed to direct the letter to the appropriate office, investigate his allegations or warn staff at CCI.

C. **DISCUSSION**

    1.    Eighth Amendment- Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Plaintiff alleges that Defendant Waddle failed to protect him by ignoring his complaint that other inmates knew of his past Penal Code 288 charge and had threatened him.  He also suggests that Defendants Davey, Sandoval, Goss, Gricewich, Hancock, Swaim and Nuckles violated the Eighth Amendment because they failed to pay attention to Plaintiff's violence and failed to investigate his records.  Plaintiff alleges that Defendant Davey told him that he would give him a double cell over and over.

Ignoring threats to an inmate can form the basis of an Eighth Amendment claim.  However, even though Plaintiff states that Defendants ignored his pleas and told him that they were going to continue his double-cell status, he points to no resulting physical harm.  In fact, even though he alleges that Defendant Waddle told him that he was going back to the yard, he was placed in Ad-Seg that same day, and remained there until his transfer to CCI.

5

The Court recognizes that Plaintiff is attempting to state a claim on his theory that he has been psychologically tormented. However, absent physical injury, a prisoner is barred from pursuing claims for mental and emotional injury. 42 U.S.C. § 1997e(e); Oliver v. Keller, 289 F.3d 623, 625-628 (9th Cir. 2002). The requisite physical injury need not be significant, but must be more than *de minimus* for purposes of 42 U.S.C. § 1997e(e). Pierce v. County of Orange, 526 F.3d 1190, 1124 (9th Cir. 2008); Oliver, 289 F.3d at 628.

Plaintiff often states that situations could have "easily escalated to a substantial risk of serious harm," or that Defendants caused psychological harm "to the point of becoming physical harm," but Plaintiff's perception of the acts does not transform the acts into something more.

For these reasons, Plaintiff fails to state a failure to protect claim against Defendants Waddle, Davey, Sandoval, Goss, Gricewich, Hancock, Swaim and Nuckles.

The Court explained this requirement to Plaintiff in the prior screening order, but permitted him to amend. At this point, Plaintiff's theory of "psychological harm" is clear and further amendment would be futile.[2] Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-1449 (9th Cir. 1987).

    2.    Eighth Amendment- Conditions of Confinement

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

---

[2] Plaintiff has filed another action, Rosas v. Holland, et al., 1:14-cv-01219-DLB (PC) (E.D. Cal) in which he makes the same type of allegations concerning his treatment at CCI.

6

Plaintiff alleges that Defendant Becera got offended after he offered Plaintiff food, but Plaintiff refused it.  He alleges that Defendant Clare skipped Plaintiff's cell twice for feeding and shrugged his shoulders as if he didn't care.  Similarly, Plaintiff alleges that Defendant Blake came to his cell and acted in a way that scared him and made him uncomfortable.

To the extent that Plaintiff attempts to state a claim based on the denial of food on two occasions, he cannot do so.  There is no indication that the denial of food caused a substantial risk of serious harm.  The Court explained this to Plaintiff in the previous screening order.

To the extent that Plaintiff attempts to state an Eighth Amendment claim because Defendant Becera became offended, or Defendant Blake made him uncomfortable, he cannot do so.  Such allegations are a far cry from the substantial risk of serious harm necessary to state a claim under the Constitution, even considering Plaintiff's theory of psychological torture.  Indeed, as with his failure to protect claim, Plaintiff points to no resulting harm.

Plaintiff also suggests that Defendant Monsenares violated the Eighth Amendment when he told Plaintiff that he never had a coaxial cable and to stop asking other officers for one.  Again, these allegations fall far short of stating a constitutional violation.

Plaintiff also makes a vague reference to the fact that other prisoners were allowed to brush their teeth or use soap.  He does not, however, allege any facts to demonstrate a sufficient denial of personal hygiene products.

Insofar as Plaintiff contends that Defendant Zamora violated the Eighth Amendment by failing to investigate his allegations of mistreatment or warn CCI, his claim fails.  Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation.  George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983.  That circumstance has not been presented here, as Plaintiff has not stated a viable claim against any Defendant for the underlying events.

7

1  Plaintiff therefore fails to state an Eighth Amendment claim against Defendants Becera,
2  Clare, Blake, Monsenares or Zamora.

3  3. Due Process

4  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations
5  of life, liberty, or property; and those who seek to invoke its procedural protection must establish
6  that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384
7  (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and
8  therefore, he cannot pursue a claim for denial of due process with respect to the handling or
9  resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v.
10 Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Therefore, the existence of an inmate appeals process
11 does not create a protected liberty interest upon which Plaintiff may base a claim that he was
12 denied a particular result or that the appeals process was deficient. Id.

13 Plaintiff alleges that Defendant Tallerico violated his due process rights by failing to
14 handle his property appeal correctly. However, as noted above, Plaintiff has no due process right
15 to have his appeal handled in a specific way. Plaintiff was informed of this in the prior screening
16 order.

17 For these reasons, Plaintiff fails to state a claim against Defendant Tallerico. This cannot
18 be cured by amendment.

19 4. First Amendment- Speech

20 The First Amendment prohibits government officials from "abridging the freedom of
21 speech ... or the right of the people peaceably to assemble." Prisoners retain those First
22 Amendment rights not inconsistent with their status as prisoners or with legitimate penological
23 objectives of the corrections system. See Pell v. Procunier, 417 U.S. 817, 822 (1974). Although a
24 prisoner does not lose all First Amendment protections when he enters prison, id., the "inmate's
25 'status as a prisoner' and the operational realities of a prison dictate restrictions on the
26 associational rights among inmates." Jones v. North Carolina Prisoners' Labor Union, Inc., 433
27 U.S. 119, 125–26 (1977). Prison regulations that infringe on a prisoner's First Amendment rights
28

are valid so long as they are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Here, Plaintiff alleges that Defendant Monsenares violated his First Amendment right to freedom of speech by telling him to stop asking other officers for his coaxial cable. Plaintiff believes that this was an attempt to silence him. Plaintiff's claim again falls short of stating a constitutional claim. An order from staff to stop speaking, even assuming that this was the intent of Defendant Monsenares' statement, in no way implicates the First Amendment.

Plaintiff therefore fails to state a claim against Defendant Monsenares. This deficiency cannot be cured by amendment.

### 5. First Amendment- Retaliation

Prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. Meachum v. Fano, 427 U.S. 215, 224-25, 96 S.Ct. 2532 (1976). However, prison officials may not "transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment rights. . . ." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). To establish a prima facie case, Plaintiff must allege and show that Defendants acted to retaliate for his exercise of a protected activity, and Defendants' actions did not serve a legitimate penological purpose. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt, 65 F.3d at 807. The injury asserted in retaliation cases is the retaliatory conduct's chilling effect on the Plaintiff's First Amendment rights. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

Plaintiff alleges that Defendant Blake transferred him in retaliation for "speaking up," or asking for equal treatment. He also blames Defendant Hancock for failing to stop this retaliatory transfer. Other than Plaintiff's speculation, he provides no facts to support a claim for a retaliatory transfer. The mere possibility of misconduct falls short of meeting the pleading standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

Plaintiff was informed of this deficiency in the prior order and has failed to correct it.

9

### 6. Equal Protection

Plaintiff alleges that Defendants Waddle and the other members of the classification committee failed to treat him equally when they allegedly ignored his complaints. Throughout his FAC, Plaintiff also makes numerous references to being treated unequally. However, his claim appears to be based on his speculative belief that Defendants are treating him differently from other prisoners as a means of punishment. Under such facts, the Equal Protection Clause has no application. Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (to state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class); Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 601-02 (2008) (a claim may also be stated by demonstrating that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose).

This cannot be cured by amendment.

### 7. Fourth Amendment

Finally, Plaintiff suggests that Defendants Waddle and the other members of the classification committee violated his Fourth Amendment right "to be secure in [his] person." ECF No. 15, at 4. The Fourth Amendment does not apply to the States, and, in any event, it does not apply to the facts of this case. Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir. 1989).

Plaintiff fails to state a claim under the Fourth Amendment and this cannot be cured by amendment.

**D.    CONCLUSION AND ORDER**

Plaintiff's FAC fails to state any claims for which relief may be granted.

Plaintiff has been granted leave to amend but has failed to cure the deficiencies. Based on the nature of Plaintiff's claims, the Court finds that further amendment would be futile. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-1449 (9th Cir. 1987).

///

///

Accordingly, Plaintiff's FAC is DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim for which relief may be granted.

IT IS SO ORDERED.

Dated: **January 30, 2015**              /s/ *Dennis L. Beck*
                                          UNITED STATES MAGISTRATE JUDGE